IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BARBARA SWANSON                                                    PLAINTIFF

v.                                    Case No. 2:15-CV-2029

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration                                     DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Barbara Swanson ("Plaintiff"), seeks judicial review of a decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits ("DIB") under the provisions of Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423(d)(1)(A). Plaintiff has exhausted her administrative remedies, and therefore, pursuant to 42 U.S.C. § 405(g), judicial review is now appropriate. After having reviewed the record for the purpose of determining whether the Commissioner's decision is supported by substantial evidence, the Court **AFFIRMS** the decision of the Commissioner.

### I.  Procedural Background

Plaintiff filed her application for DIB on November 30, 2012, claiming disability beginning April 1, 2007, due to COPD, diabetes, arthritis, osteoporosis and mental issues. (Tr. 129-136, 158) The State Disability Determination Services denied Plaintiff's application initially and upon reconsideration. (Tr. 51-60, 62-74) Administrative Law Judge (the "ALJ"), Hon. Bill Jones, conducted a hearing, at Plaintiff's request, on September 4, 2013, at which Plaintiff and Montie Lumpkin, a vocational expert, testified. (Tr. 22-44) Plaintiff appeared at the hearing without an attorney or other representative. (Tr. 22)

1

Plaintiff previously filed an application for DIB on September 3, 2011. That claim was also denied at the initial and reconsideration levels. Plaintiff filed a written request for a hearing on January 31, 2012. (Tr. 49) By letter dated August 15, 2012, Plaintiff's representative, Lawrence Fitting, asked to withdraw the hearing request, and it was dismissed on August 17, 2012. (Tr. 49) The reconsideration determination dated January 27, 2012, became the final decision on her claim through that date. (Tr. 49) Accordingly, the relevant period for the instant claim is from January 28, 2012, through September 30, 2012, the date Plaintiff was last insured.

By written decision dated October 17, 2013, the ALJ found that Plaintiff had the following severe impairments: obesity, asthma/chronic obstructive pulmonary disease (COPD), and degenerative joint disease of her left knee. (Tr. 10) After reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or medically equal the level of severity of any impairment listed in the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix I. (Tr. 13)

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except that the claimant would need to avoid even moderate exposure to dust, odors, gases, poor ventilation and similar environments. (Tr. 13)

With the assistance of the testimony of the vocational expert (the "VE"), the ALJ concluded that Plaintiff is unable to perform any past relevant work. (Tr. 15) However, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could have performed. (Tr. 15) The ALJ concluded Plaintiff was not under a disability (as defined in the Social Security Act) at any time from January 28, 2012, through September 30, 2012. (Tr. 16)

Plaintiff requested a review of the ALJ's unfavorable decision by the Appeals Council (Tr. 4), and this request was denied on December 8, 2014. (Tr. 1-3) The ALJ's decision therefore became the final decision of the Commissioner, and Plaintiff's administrative remedies were exhausted. (Tr. 1) Plaintiff subsequently filed her Complaint herein seeking judicial review of the Commissioner's decision. (Doc. 1) Both parties have filed briefs and this case is before the Court for decision. (Docs. 8-9)

## II.  Standard of Review and Applicable Law

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if she reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Analysis

The ALJ in this case found Plaintiff was not disabled and had the RFC and capability to successfully adjust to other unskilled occupations performed at the sedentary level that exist in significant numbers in the national economy. (Tr. 16) Plaintiff alleges that the ALJ erred as: (1) Plaintiff did not make a knowing and intelligent waiver of representation; and, (2) the ALJ failed to properly develop the record. (Doc. 8)

### A.  Waiver of Representation

Plaintiff appeared and testified at the hearing without an attorney or other representative.

Plaintiff now contends she neither knowingly nor intelligently waived her right to representation. We do not agree.

Plaintiff was represented by attorney, Lawrence Fitting, on a previous disability claim. (Tr. 45-49) Further, when she filed the instant claim she continued to state that Mr. Fitting was her representative. (Tr. 50- 51, 61-62, 75-77, 80, 82, 84, 86-87, 90-91, 96, 102) On February 1, 2013, the agency sent a letter to Plaintiff and Mr. Fitting advising that her claim was denied and advising of her right to file a request for reconsideration. (Tr. 78-80) The letter specifically advised:

> "IF YOU WANT HELP WITH YOUR APPEAL
>
> You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.
>
> If you get someone to help you, you should let us know. If you hire someone we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee." (Tr. 79-80)

On March 18, 2013, the agency sent Plaintiff and Mr. Fitting a letter advising her claim was denied at the reconsideration level and of her right to request a hearing before an ALJ. (Tr. 81-82) This letter included the same language regarding assistance with an appeal. (Tr. 82) On April 1, 2013, Plaintiff requested a hearing before an ALJ, and again stated she was represented by Mr. Fitting. (Tr. 90-91) Accordingly, it is clear that Plaintiff knew of her right to have an attorney represent her.

On August 19, 2013, Mr. Fitting sent a letter to the ALJ and a copy to Plaintiff requesting to withdraw as Plaintiff's attorney. (Tr. 118) On August 20, 2013, the SSA sent Plaintiff a letter advising her that Mr. Fitting had withdrawn as her representative. (Tr. 119-124) The letter advised

Plaintiff that she could still choose to have a representative and to notify the SSA as soon as possible if she decided to do so. (Tr. 119-124) The letter also enclosed the leaflet "Your Right to Representation" and a list of groups that could assist her in finding a representative. (Tr. 119-124)

At the hearing on September 4, 2013, Plaintiff signed a waiver of representation form that stated:

> "When the hearing started and the Hearing Reporter started the tape recorder running, the Administrative Law Judge verbally explained to me my right to be represented by an attorney or some one that is not an attorney. I understand the explanation of my rights in connection with my hearing even though I do not have an attorney or other representative to represent me. I desire to represent myself for this hearing." (Tr. 128)

The ALJ explained at the hearing:

> "You have the right to be represented by an attorney or non-attorney who may help you obtain and submit records, explain medical terms, make requests, protect your rights and present evidence in a light most favorable to your case. A representative may charge you for expenses such as obtaining and copying medical records, but may not charge or receive a fee unless I approve it. Representatives do not normally get paid unless I award benefits, and then may only accept 25 percent of your back benefits or $6000, whichever is less. Some legal service organizations offer free legal representation if you qualify under their rules, but this is usually need based. Then of course you may choose to proceed today without a representative. Do you understand what I just said?" (Tr. 25)

Plaintiff replied, "Yes, sir." (Tr. 26) Ultimately, the ALJ advised Plaintiff that she must tell him if she wanted to proceed without an attorney or offered to give her a continuance. (Tr. 27) Plaintiff stated that she wanted to proceed with the hearing and that she was making the decision freely. (Tr. 27)

It is clear that Plaintiff knew of her right to have a representative assist her through her previous representation by Mr. Fitting. Further, as set forth above, Plaintiff was repeatedly advised of this right and provided with information to assist her in finding another representative. Plaintiff

signed a waiver of representation at the hearing and advised the ALJ that she wished to proceed

without a representative, despite being offered a continuance to allow her time to find a

representative. This is more than sufficient to satisfy the requirements of advising a claimant of her

right to representation. *See Wingert v. Bowen*, 894 F.2d 296, 298 (8th Cir. 1990). Accordingly, the

Court finds Plaintiff knowingly and intelligently waived her right to representation at the hearing.

## B.  No Failure to Develop the Record

Plaintiff contends the ALJ erred by failing to properly develop the record by "failing to elicit

testimony on how Plaintiff's physical and mental conditions affected her physical and mental

abilities to function in the workplace..." and by failing to send Plaintiff for consultative physical and

mental examinations. (Doc. 8, pp. 7-9)

While an ALJ does have a duty to fairly and fully develop the record, this duty is not never-

ending and an ALJ is not required to disprove every possible impairment. *McCoy v. Astrue*, 648 F.3d

605, 612 (8th Cir. 2011) (citation omitted). The ALJ is required to order medical examinations and

tests only if the medical records presented to him do not give sufficient medical evidence to

determine whether the claimant is disabled. *Id.* (citation omitted). There is no bright line test for

determining whether the ALJ failed to adequately develop the record, and this determination is made

on a case by case basis. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994).

The need for medical evidence does not necessarily require the Commissioner to produce

additional evidence not already within the record. An ALJ is permitted to issue a decision without

obtaining additional medical evidence so long as other evidence in the record provides a sufficient

basis for the ALJ's decision. *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001). Providing

specific medical evidence to support her disability claim is, of course, the Plaintiff's responsibility,

and that burden of proof remains on her at all times to prove up her disability and present the strongest case possible. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991); 20 C.F.R. § 416.912(a) and (c).

In her brief, Plaintiff contends the ALJ failed to elicit testimony from Plaintiff regarding the effects of her mental and physical impairments and should have ordered consultative examinations because he "was confused about her medical treatment, and unsure if he had the correct medical records." (Doc. 8, p. 9)

However, the ALJ asked Plaintiff what particular ailments would keep her from working. (Tr. 35) Plaintiff testified that she can't breathe and can hardly walk any more. (Tr. 35) Plaintiff stated that she has hepatitis C, and her liver and kidneys are shutting down and causing her to swell. (Tr. 31, 35-36) Plaintiff further stated that her "mental mind is gone" due to stress. (Tr. 36) Plaintiff testified that she was diagnosed with rheumatoid arthritis that causes pain in her legs and that her hands go numb due to poor circulation. (Tr. 40)

As noted by the ALJ, the record contains no diagnosis of hepatitis C. (Tr. 11) Laboratory testing from July 25, 2012, was negative for hepatitis A, B and C. (Tr. 349) Additionally, Plaintiff testified that she had not sought any treatment for her liver or hepatitis. (Tr. 39) The record is also void of any diagnosis of osteoporosis or rheumatoid arthritis.

The ALJ noted that Plaintiff had a medically determinable mental impairment of generalized anxiety disorder but found it was nonsevere as it did not cause more than minimal limitation in her ability to perform basic mental work activities. With regard to her alleged numbness and pain in her extremities, the relevant records reflect Plaintiff does not suffer from any severe impairments.

Plaintiff presented to the emergency room at Mercy Hospital in Paris, Arkansas, on

December 8, 2011, with knee pain and was advised to take Naproxen and Tramadol for pain and to follow up with her primary care provider after an x-ray showed only mild degenerative changes. (Tr. 229-35) On June 24, 2012, Plaintiff presented to the emergency room in Paris, Arkansas, complaining of low blood sugar, headaches, shortness of breath and chest pain. (Tr. 236-38). Plaintiff advised that the symptoms were aggravated by stress. (Tr. 238) Plaintiff was diagnosed with anxiety and prescribed Ativan every six hours as needed for her symptoms. (Tr. 252) On December 15, 2012, Plaintiff returned to the emergency room with chest pain, anxiety and shortness of breath. (Tr. 259) Plaintiff was prescribed an Albuterol inhaler, Zithromax, and Prednisone and directed to follow up with Dr. Jason Richey in Paris in one week. (Tr. 259-60) She was also advised to stop smoking to avoid more respiratory problems and infections. (Tr. 260) An examination was negative for altered mental status, but it was noted that she was nervous and anxious. (Tr. 261)

Plaintiff was examined by Dr. Nguyen on June 25, 2012, to establish care subsequent to her emergency room visit the previous day. (Tr. 346) Plaintiff complained of knee pain, depression, anxiety and headaches. (Tr. 346) Plaintiff's heart rate and respiration were normal. (Tr. 347) Dr. Nguyen noted she was anxious and was limping but had good stability. (Tr. 347) Plaintiff was prescribed Tramadol for her pain and Citalopram for her anxiety. (Tr. 347) Plaintiff was examined by Dr. Nguyen on July 25, 2012, complaining of leg pain. (Tr. 344)  Plaintiff's heart rate, respiration, psychiatric exam, gait and stance were normal. (Tr. 345) Plaintiff was prescribed Prozac to replace the Citalopram for her anxiety and Tramadol for her leg pain. (Tr. 346)

Plaintiff was examined by Dr. Thinh Nguyen on August 9, 2012 for her knee pain stating that the Tramadol was not helping her pain. (Tr. 343) Dr. Nguyen noted Plaintiff was in no acute distress with normal respiration and heart rate. (Tr. 344) A motor exam was normal, however, Plaintiff was

limping. (Tr. 344) Dr. Nguyen noted no instability and Plaintiff had pain with range of motion only on extreme ends. (Tr. 344) Plaintiff was prescribed Meloxicam for her knee pain and directed to follow up as needed. (Tr. 344)

Plaintiff provided very little medical evidence in support of a claim for disability based upon any mental impairment or numbness and pain in her extremities. If the impairments are not severe enough to significantly limit the claimant's ability to perform most jobs, the impairments do not prevent the claimant from engaging in substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). And, the burden is on the claimant to furnish medical and other evidence. *See Matthews v. Bowen,* 879 F.2d 422, 424 (8th Cir.1989) (ruling that ALJ did not err in not ordering consultative examination before concluding claimant had no mental impairment where claimant did not allege disability due to mental impairment and presented only minimal evidence of anxiety). Plaintiff's subjective complaints cannot be disregarded solely because they are not supported by the medical evidence. *Melton v. Apfel*, 181 F.3d 939, 941 (8th Cir. 1999). Where inconsistencies appear in the record as a whole, however, a claimant's subjective complaints can be discounted. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1987).

The record is void of any attempt by Plaintiff to seek professional mental health treatment for her anxiety and depression. The medical record is also inconsistent with the degree to which Plaintiff alleges her pain would limit her ability to work. In a function report dated January 3, 2013, Plaintiff noted that she could wash dishes, sweep, make her bed and cook. (Tr. 171) She stated she could grocery shop for thirty minutes at a time, pay bills and count change. (Tr. 174)

There was no indication, however, that Plaintiff's depression or pain was either severe or would cause any work-related limitations. *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir.

1997) (failure to seek medical assistance contradicts subjective complaints). The Court finds the ALJ

did not violate his duty to develop the record as there is sufficient medical evidence in the record to

support his determination that these other alleged impairments did not rise to the level of being

severe.

Even if Plaintiff could show the ALJ failed to fully develop the record, which she failed to

do, Plaintiff did not show she was prejudiced or treated unfairly by the ALJ's alleged failure to

develop the record. Therefore, remand would not be proper. *Onstad v. Shalala*, 999 F.2d 1232, 1234

(8th Cir. 1993). Accordingly, the ALJ did not violate his duty to develop the record by failing to

elicit more testimony from Plaintiff or to order medical and psychiatric evaluations based upon the

medical evidence and the testimony presented at the hearing. Further, substantial evidence supports

the ALJ's finding these other alleged impairments were either not medically determinable or non-

severe.

## B.  No Error in RFC Determination

The ALJ determined Plaintiff has the RFC to perform sedentary work except she would need

to avoid even moderate exposure to dust, odors, gases, poor ventilation and similar environments.

(Tr. 13) The Court finds substantial evidence supports the ALJ's RFC determination.

It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's

residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th

Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. §

404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson*

*v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all

relevant evidence in the record, including medical records, observations of treating physicians and

others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390

F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations

resulting from symptoms such as pain are factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."

*Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a

claimant's RFC must be supported by medical evidence that addresses the claimant's ability to

function in the workplace." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

As discussed in the previous section, there was nothing in the medical evidence that would

call into question the ALJ's RFC assessment of sedentary work with environmental limitations. This

assessment takes into account Plaintiff's history of COPD, obesity and degenerative joint disease of

her left knee. Further, this assessment is consistent with the agency's consultants' assessments of

January 31, 2013, and March 15, 2013. (Tr. 56-59, 70-73). Finally, none of Plaintiff's treating

physicians noted any work-related limitations. Accordingly, the Court finds there is substantial

evidence to support the ALJ's RFC assessment.

### V.  Conclusion

For the foregoing reasons, the ALJ committed no reversible error and his decision is

supported by substantial evidence in the record as a whole. The ALJ's decision is accordingly

**AFFIRMED**. Plaintiff's case is hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED** this 10th day of March, 2016.

/s/  *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE